IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

White's Landing Fisheries, Inc., *et al.,*

    Plaintiffs,

        v.

State of Ohio, Department of
Natural Resources Division of Wildlife, *et al*.,

    Defendants.

Case No. 3:24-cv-01371

Judge James G. Carr

**ORDER**

Pending is the Motion to Dismiss of Defendants, the State of Ohio, Department of Natural Resources (ODNR), it's Director, Mary Mertz, and Division Chief, Kendra Wecker (State Defendants). Also named as Defendants are the United States of America, Department of Interior, Fish & Wildlife Services (Dep't. of Interior), and the Secretary of the Interior, Deb Haaland (Federal Defendants). (Doc. 7).

Plaintiffs, Whites Landing Fisheries, Inc., a Sandusky, Ohio commercial fishery, and its owner, Dean Koch, filed their Response. (Doc. 11). And Defendants filed a Reply. (Doc. 12).

Plaintiffs claim that ODNR, the Dep't of Interior, and the respective department heads, whom Plaintiffs sue in their official and individual capacities, violated their rights under the Ohio and U.S. Constitutions. (Doc. 1, PgID 4-8). Plaintiffs also allege breach of fiduciary duty and civil conspiracy as secondary causes of action. (*Id.* at 8-9).

The State Defendants have filed their Motion under 12(b)(1) – asserting lack of jurisdiction – and 12(b)(6) – failure to state a claim. For the reasons below, I grant the Defendants' Motion and dismiss this case as to *all* Defendants.

**Background**

1

The Dep't of Interior's Fish and Wildlife Service has delegated management of fishery resources in the Great Lakes to the Great Lakes Fisheries Commission. The Commission was formed under the Great Lakes Fishery Act of 1956, 16 U.S.C. §§ 931, *et seq.*. The membership consists of U.S. States and Canadian Provinces bordering the Great Lakes. The Commission's role is advisory – primarily to facilitate research and make recommendations. It has no regulatory authority. 16 U.S.C. § 933.

Regulation is left to the members, such as the State of Ohio. See Ohio Rev. Code §§ 1501, 1533 and Ohio Admin. Code Chapter 1501:31. ODNR is tasked with developing rules and procedures for fishing license allocations. Ohio Rev. Code §§ 1533.341 *et seq.*, 16 U.S.C. § 939b. And its Division of Wildlife allocates quotas of game and fish as determined by the Great Lakes Fisheries Commission. Ohio Rev. Code § 1501.02.

Provisions of Ohio Rev. Code Chapter 1531 bestow the Division of Wildlife Chief with authority to control all matters relating to the management of wild animals and fish and to adopt, amend, or rescind rules for such purpose. §§ 1531.06(B)(1), (2), 1531.09. The Chief may also limit the number and type of commercial fishing licenses. § 1533.342. In doing so, she must consider various factors, including "data relating to the protection, preservation, management, and utilization of fish species…." § 1533.342(C). The Chief also has the statutory authority to fix the species, weight, number, and size of fish to be taken. § 1531.342 (D)(1).[1]

Ohio law also limits the transferability of fishing licenses. Ohio. Rev. Code § 1533.36. Only commercial licenses may be transferred, and this is even limited to the type of commercial fishing

---

[1] Ohio regulates the amount of yellow perch fishermen may catch in Lake Erie. Ohio Admin. Code 1501:31-3-12 "Quota management system for Lake Erie fishes." The state has divided the Lake into perch management units, which are the geographic areas by which yellow perch quotas are allocated as established by the Lake Erie Committee of the Fishery Commission. Ohio Admin. Code §1501:31-1-02(ooo).

2

gear for which the original license was issued. § 1533.36(b)(3). And the Division of Wildlife Chief, with the Director's approval, "shall determine if any quota species of fish are transferable with the transferred license." § 1533.36(b)(2).

## Discussion

The rule at issue, Ohio Adm. Code 1501:31-3-12, was first enacted on January 2, 1996, and was most recently amended on January 1, 2023. This rule establishes the authority of the Division of Wildlife Chief to set quotas of catchable fish based on the unit areas and whether the fishing is considered sport or commercial. The intended purpose of the rule is to "prevent over exploitation" of fish species and determine the "maximum allowable annual taking between and within the sport and commercial fisheries." See Ohio Rev. Code § 1533.341.

Plaintiffs challenge the limitations Defendants have placed on the numbers and the method of fishing used by commercial fisheries. According to the parties, the January 2023 revisions eliminated "seine" fishing[2] as a way to catch yellow perch. The quotas are now allocated to trap nets,[3] which is another type of commercial fishing. The rule allows trap net license holders to transfer perch quotas to other trap net licensees, but not to seine license holders.[4]

Among other contentions, Plaintiffs, who wish to continue seine fishing, argue these restrictions involve an unlawful taking of property under the Fifth and Fourteenth Amendments.

### The State Defendants

---

[2] Seine is a type of fishing process using a large vertical net held up by buoys and weighted down at the bottom. The net snares large amounts of fish, making it difficult to limit the limit the type of fish caught. https://cfs.osu.edu/archives/collections/lake-erie/seining.

[3] Trap fishing utilizes a net structure, which is placed at a right angle to the suspected path of traveling fish. When fish confront a trap net, they turn and swim along it and get trapped in boxes. https://cfs.osu.edu/archives/collections/lake-erie/trap-netting.

[4] Plaintiffs also reference rule changes banning commercial fishing of walleye in 1980. (Doc. 1, PgID 5). I disregard those allegations as time barred. *McNamara v. City of Rittman,* 473 F.3d 533 (6th Cir. 2007).

1. **The Plaintiffs' claims under the Takings Clause fail as a matter of law.**

The Takings Clause of the Fifth Amendment to the United States Constitution provides that private property shall not "be taken for public use, without just compensation." This clause applies to the individual states by virtue of the Fourteenth Amendment. *See Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 387 (6th Cir. 2022).

Federal courts have established a two-part test to determine whether government actions amount to a taking of property under the Fifth Amendment. First, a court must determine whether the plaintiff "has established a cognizable property interest." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004). Second, "where a cognizable property interest is implicated, the court must consider whether a taking occurred." *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 609 (6th Cir. 2016).

In order to have a cognizable property interest, one "'must have more than an abstract need or desire for it * * * [or] a unilateral expectation of it,' and 'must, instead, have a legitimate claim of entitlement to it.'" *Baltimore Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "[T]here is a distinction between simply not being disturbed in the particular use of one's property and having the *right* to that use of the property…." (Emphasis sic). *State ex rel. AWMS Water Sols., LLC v. Mertz*, 2022-Ohio-4571, ¶¶ 38-40, 204 N.E.3d 140, 149–50, (Ohio Ct. App. 2022), *rev'd and remanded sub nom., State ex rel. AWMS Water Sols., L.L.C. v. Mertz,* 174 Ohio St. 3d 401 (2024).

In a case similar to this, *Burns Harbor Fish Co. v. Ralston*, the Southern District of Indiana, dismissed a Fifth Amendment Takings Clause claim where the State banned the use of gill nets in commercial fishing.[5] 800 F. Supp. 722 (S.D. Ind. 1992). The plaintiff held four commercial fishing licenses and regularly fished (with gill nets) for large numbers of perch on Lake Michigan.

---

[5] Burns Harbor used "gill nets" to catch perch. However, gill nets cannot discriminate among fish. So in using these nets, commercial fishermen were catching coveted sport fish, namely salmon and trout. After

The court, finding the right to fish "has value," held the plaintiff had a "protectible property interest in its fishing licenses" within the meaning of the Fourteenth Amendment. *Id.* at 729-30. Yet the analysis did not end there. The court then elaborated that the commercial fishermen had no reasonable expectation that their licenses would be free and clear of environmental regulations duly promulgated by the IDNR. *Id.,* citing Ind. Code § 14-2-7-12 (1987) ( "A commercial fishing license 'may be revoked…").

So, in analyzing the second portion of the "Takings" test, the court concluded the ban on gill net fishing, while cutting into plaintiff's profit margin, simply limited the *means* by which plaintiff could catch fish. Thus, held the court, the IDNR's rule did not constitute a "taking" of plaintiff's property for which just compensation was due. *Id.* at 733. As the court noted:

> …the possibility that the DNR would introduce regulations that would alter the permissible means for commercially gathering fish was apparent on the face of the licensing statute. Thus, …[t]his Court concludes that Burns Harbor never had a legitimate claim of entitlement to fish pursuant to its licenses that was not encumbered by the State of Indiana's preeminent right to enforce restrictions on fishing equipment that are reasonably related to a legitimate state purpose.

*Id.* at 730.

Similarly, the Rhode Island Supreme Court tackled the question of whether the State's Constitution guaranteed the right of fishery and also whether the State's Legislature, which placed a quota on the amount of certain licenses, was prohibited from granting some commercial fisherman, but not others, access to certain species. *Rhode Island Fishermen's All., Inc. ex rel. Fuka v. Dep't of Env't Mgmt.,* No. CIV.A.07-230ML, 2008 WL 4467186 (D.R.I. Oct. 3, 2008), *aff'd sub nom. Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Env't Mgmt.,* 585 F.3d 42 (1st Cir. 2009).

---

conducting studies about the effect of gill nets on other fish populations in Lake Michigan, the IDNR enacted a rule, pursuant to its own statutory authority, banning the use of gill nets for six weeks. The Indiana Legislature then codified the rule, making the ban on gill nets permanent.

Relying on its prior decision in *Riley v. Rhode Island Dep't Env. Mgm't.*, 941 A.2d 198 (R.I. 2008), the court held a prohibition on trap allocation (to catch lobsters) did not violate the State's Constitution. "Plaintiffs have no fundamental right to harvest lobster using a specific method of fishing… [and] thus no fundamental right of fishery is implicated in this matter." *Rhode Island Fishermen's All., Inc., supra* at *7-8.

Whether Plaintiffs' commercial fishing license(s) is "property" for purposes of the Fifth and Fourteen Amendments is debatable. As noted above, the Southern District of Indiana found it is. As did my colleague, Hon. Judge Jack Zouhary, in the case of *Great Lakes Com. Fisherman, LLC. v. Ohio Dep't of Nat. Res.*, Case No. 3:08-cv-00010 (2008):

> After reviewing the Ohio licensing statute, Revised Code § 1533.342, this Court concludes Great Lakes has a protected property interest in its fishing licenses. Great Lakes members pay for the right to fish the waters of Lake Erie; the right to fish commercially is limited and has value; and the Ohio licensing statute creates specific rules for revoking a license. Thus, Great Lakes has a legitimate claim of entitlement to fish in accordance with the terms of members' licenses, and these licenses constitute a property interest within the meaning of the Fourteenth Amendment. This conclusion is consistent with significant precedent that licenses are protected property interests. (Citing among other cases, *Le Bauve v. Louisiana Wildlife & Fisheries Comm'n*, 444 F. Supp. 1370, 1378-79 (E.D. La. 1978)).

(Doc. 27 Memorandum, Opinion, and Order 06/20/2008)

But other courts have held the opposite. See, *e.g., Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269, 1275 (Fed. Cir. 2023) ("…FFI has no cognizable property interest in its fishing permits, licenses, and endorsements [issued under the Magnuson-Stevens Act]…"); *Conti, supra,* 291 F.3d at 1341-42 ("the absence of crucial indicia of a 'property right' i.e. - transferability and exclusivity - coupled with the government's right to suspend, revoke, or modify, compels the conclusion that fishing permits are revocable privileges, rather than compensable property."); *Members of Peanut Quota Holders Ass'n, Inc. v. United States,* 421 F.3d 1323, 1333-34 (Fed. Cir. 2005) (distinguishing between peanut quota allotments, which include a property right, and certain fishing licenses, which do not); *United States v. Cooke, Inc.*, No. 12-CV-5743, 2025 WL 27662 at

*1 (S.D.N.Y. Jan. 3, 2025) ("neither fishing licenses nor fish qualify as "property"); and *Vanek v. State, Bd. of Fisheries*, 193 P.3d 283, 289 (Alaska 2008) (…nothing … suggests that [plaintiff's] fishing licenses and permits were fundamentally different from licenses and permits …not protected by the Takings Clause…").

Regardless of whether a fishing license is "property," applying these principles, neither White's Landing, nor Mr. Koch, have a vested interest in uncaught fish. These decisions all support the premise that the State of Ohio, under direction of the Great Lake's Fishing Commission, can properly restrict or prohibit commercial fishing within its territorial waters. Fish belong to the State, and through it to its entire population. Ohio Rev. Code § 1531.02. Consequently ODNR's restrictions do not amount to a "taking" under the Fifth and Fourteenth Amendments.

As a licensee, Plaintiffs have, at most, a restricted right to do what Ohio allows a license holder to do. And just as having a driver's license does not allow a driver to speed, a commercial fishing license does not permit the holder to take as many fish as desired. There is, accordingly, no merit to Plaintiffs' Takings Clause claim under either the Federal or the Ohio Constitutions.

2. **Plaintiffs' supplemental claims and assertions must also be dismissed.**

    a. **A Federal Court's review of state regulatory matters is impermissible.**

And while the analysis ends there, I will also address the supplemental state-law claims. As the State Defendants point out, the Plaintiffs' Complaint appears to be an end round to have this Court review the promulgation of rules by an Ohio agency.[6] Controlling law leaves this expressly to the State administrative and adjudicative process, not to the Federal Courts. *Mixon v. Ohio;* 193 F.3d

---

[6] For example, Plaintiffs, in their Complaint, claim Mr. Koch distributed written objections and recommendations to ODNR's Sandusky Officer about the proposed rule's changes concerning seine fishing. (Doc.1, PgID 7). According to Plaintiffs, someone at ODNR informed Mr. Koch his proposals were sent "to Columbus" (assuming that is a reference to ODNR's headquarters). (*Id.*). But no one informed him about a hearing, and the rule was passed - and according to Plaintiffs "fraudulently" - without comment." (*Id.*). In this sense, Plaintiffs are challenging Ohio's rule making process under Chapter 119.

7

389, 399 (6th Cir. 1999) (emphasis added). See also, *Pennhurst State Sch. Hosp. v. Halderman*, 465 U.S. 89, 124 (1984).

The Ohio General Assembly created its own version of the Administrative Procedures Act, 5 U.S.C. §§ 701, *et seq.* in Ohio Rev. Code Chapter 119. The 119 process permits public commentary and opportunity for hearing prior to ODNR's enactment of or changes to a codified rule. See Ohio Rev. Code §§ 1531.08, 1533.01, Ohio Admin. Code Chapter 1501-1. It also permits State court review of Ohio agency orders. Ohio Rev. Code 119.02. Chapter 119 outlines the appropriate forum for Plaintiffs to be heard. I do not have the authority to examine or adjudicate the actions ODNR and its officials take with respect to enforcement of its laws and regulations. That is best left to the Ohio courts and the State's statutory processes for doing so.

### b. Plaintiffs' breach of fiduciary claims also fail as a matter of law.

Plaintiffs also cannot establish a breach of fiduciary duty claim.

"A fiduciary relationship is "a relationship in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 442 (1996). Plaintiffs' averments fail to demonstrate how ODNR and its officers had any confidential, special, or heightened duty to or relationship with them. *Calvey v. Stifel, Nicolaus & Co.*, 850 Fed. Appx. 344, 347 (6th Cir. 2021). Therefore, their breach claim fails.

### c. Plaintiffs' assertions of civil conspiracy fail to state a plausible claim for relief.

Under Ohio law, to prevail on civil conspiracy, Plaintiffs must prove: (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) an unlawful act independent from the conspiracy. *Koch v. Ohio Dep't Nat. Res.*, No. 3:18-CV-2287, 2020 WL 1140072, at *9 (N.D. Ohio Mar. 9, 2020) (Helmick J.), *aff'd sub nom, Koch v. Ohio Dep't*

*Nat. Res.* 858 F. App'x 832 (6th Cir. 2021). See also, *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475, (1998).

A "conspiracy claim must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Jordan v. Murphy,* 145 F. App'x 513, 520 (6th Cir. 2005). Plaintiffs do not allege facts that support the inference that the Defendants, pursuant to a common understanding, conspired t to achieve a goal of depriving commercial seine fishing license holders of their trade or resultant income.

Therefore, I dismiss the conspiracy claim Plaintiffs assert here. And in doing so, I note Plaintiffs replicate a similar pleading format as to an alleged conspiracy that judges in this Court have found insufficient. See *e.g. Koch v. Ohio, supra* at *9 ("Because Koch fails to allege facts which would support the inference that the defendants, pursuant to a common understanding, worked in concert to achieve their goals, he fails to state a claim for civil conspiracy….").

3. **The State and its actors are immune from suit.**

In light of the foregoing, I need not give lengthy address to the State Defendants' entirely accurate contention that the Eleventh Amendment protects the State and its officials from suit. Suffice to say, I concur. Unless a State has waived its Eleventh Amendment immunity or Congress has abrogated it, a State cannot be sued regardless of the relief sought. *Alabama v. Pugh*, 438 U.S. 781 (1978); *Edelman v. Jordan*, 415 U.S. 651 (1974) (barring such claims in federal courts).

Assuming Plaintiffs had a case that could escape a 12(b) motion, as previously noted in this District, the State has not waived its or ODNR's immunity. See *Koch supra at* *2 (extending immunity to Ohio and ODNR); *Great Lakes Com. Fisherman v. Department of Natural Res.*, Case No. 3:08 CV 10 (N.D. Ohio 2008) (Zouhary, J.) (Dismissing claims of commercial fishing operators against the Director of ODNR, and the Chief of the Ohio Division of Wildlife, finding that the Eleventh Amendment barred suit for injunctive and declaratory relief).

Furthermore, Defendants Mertz and Wecker are immune from suit in their capacity as state officials. *Koch* *2 citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 106 (1984).

While the Court *could* exercise jurisdiction over these officials as Plaintiffs sued them in their *individual* capacities, (see *Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002)), to survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Twombly* at 555.

And as outlined above, Plaintiff cannot prove facts sufficient to link Mertz or Wecker in some civil conspiracy. Nor have they breached any fiduciary duties allegedly owed to Plaintiffs. Thus claims against them in a personal capacity also fail under the *Iqbal/Twombly* standard.

For all the reasons outlined above, dismissal is entirely appropriate as to ODNR, Director Mertz, and Chief Wecker.

## The Federal Defendants

**1. Plaintiffs failed to properly serve the United States and the Secretary of Interior**

I further dismiss Plaintiffs' claims against the Dep't of Interior and the Secretary for want of perfected service, and thus, for want of prosecution. Fed. R. Civ. P. 4(i) delineates how service on the United States and its officers/employees must effected. Specifically, the plaintiff must deliver a copy of the summons and complaint to the U.S. Attorney's Office or send a copy by registered or certified mail to the civil-process clerk at the U.S. Attorney's Office AND send a copy via registered or certified mail the United States Attorney General. R. 4(i)(1)(A),(B). (Emphasis added).

Moreover, Plaintiffs were required to serve the Secretary of the Interior by serving the United States *and* Secretary Haaland by registered/certified mail for naming her in her official

capacity. Fed. R. Civ. P. 4(i)(3).[7] Rather, they relied on certified mail sent directly to the Defendants. (Doc. 5, Doc. 6). So, having failed to properly perfect service, I dismiss Plaintiffs' claims against the Federal Defendants.

### 2. The Plaintiffs' claims against the Department of Interior and Secretary would also fail.

While I need not, therefore, address the Plaintiffs' putative claims against the Federal Defendants, I will say, were I to consider the Takings claim on its merits, I necessarily would have to conclude it is also meritless for the reasons outlined above.[8]

As would I conclude the conspiracy and breach of fiduciary duty claims have no merit for the same reasons outlined above.

Furthermore, though I dismiss the Complaint against the Federal Defendants for failure to perfect service, I caution the Plaintiffs and counsel that, before deciding to proceed further, they should carefully consider the lack of merit to such claims and Defendants' potential immunity as well. See *e.g. United States v. Sherwood,* 312 U.S. 584, 586, (1941); *Sierra Club v. Hickel*, 467 F.2d 1048 (6th Cir.1972) (McCree J. concurring); and *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982).

**Conclusion**

---

[7] The Clerk's Office even issued a notification to Plaintiffs on August 28, 2024: "If a U.S. Government agency or officer is sued, you must provide summons for that defendant, for the U.S. Attorney General (Department of Justice, Washington, D.C. 20530) and the U.S. Attorney for the Northern District of Ohio (801 West Superior Avenue, Suite 400, Cleveland, OH 44113-1852)." Yet, Plaintiffs took no action to serve the U.S. Attorney in Washington or Cleveland.

[8] This is but one among other baseless suits that Mr. Koch has filed challenging Ohio's regulation of its commercial fisheries. That being so, I resist the temptation to issue an Order calling upon him and his attorney to show cause why they should not be sanctioned. In doing so I caution Plaintiffs and their counsel from further attempts to challenge Ohio's fishing laws and regulations. And I advise the State of Ohio if Mr. Koch, or others, institute equally fatally flawed litigation, to consider asking the Court to impose sanctions.

As Defendants point out – and in my view, accurately so – the trigger for this suit was the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) and the Ohio Supreme Court's preceding decision in *TWISM Ents., LLC v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St. 3d 225 (2022).

Those cases reject the long-standing precedent that courts should give *Chevvron* deference to agency interpretations of their (ambiguous) governing laws. In both cases, the highest court rejected that doctrine. But as Defendants aptly note, this is not a case of judicial review of an ODNR decision, or a case seeking interpretation of a governing statute(s), or even a challenge to Defendants' rule-making authority.

This case is a direct civil action because Plaintiffs feel, wrongly so, that Ohio's regulation of the fishing industry amounts to taking of a right. This Court therefore lacks necessary jurisdiction to hear such claims under Fed. R. Civ. P. 12(b)(1). And of the limited jurisdiction this Court might otherwise have, the claims must be dismissed under Fed. R. Civ. P. 12(b)(6) as Plaintiffs state no claim upon which relief may be granted.

For all of the foregoing reasons, it is hereby

ORDERED THAT:

1. Defendants' Motion to Dismiss (Doc. 7) is **granted;**

2. Plaintiffs' Complaint (Doc. 1) is **dismissed with prejudice** as to the State Defendants; and

3. Plaintiffs' Complaint (Doc. 1) is **dismissed** for lack of service/lack of prosecution as to the Federal Defendants with a note of caution that perfection of service will not repair the asserted claims against them.

So ordered.

Date: April 17, 2025                                    /s/ James G. Carr
                                                        Senior U.S. District Judge